UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| BRIAN KENDRICK, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Cause: 3:22-CV-673-DRL-MGG |
| DORELL BASS and LANRE IDOWU, | ) ) ) |
| Defendants. | ) ) |

**DEFENDANTS' BRIEF IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT**

### I. INTRODUCTION

Plaintiff brings this Eighth Amendment action against Indiana State Prison ("ISP") Officer Lanre Idowu and former Sergeant Dorrell Bass. The designated evidence demonstrates that the Defendants did not act with the required level of deliberate indifference to support Plaintiffs claims regarding his medical care and his conditions of confinement on December 17, 2021. As a consequence, summary judgment should be granted in their favor as a matter of law.

### II. STATEMENT OF MATERIAL FACTS

The Defendants adopt and incorporate by reference their Statement of Material Facts, filed separately herewith in enumerated paragraphs pursuant to N.D. Ind. L.R. 56-1(a)(3).

### III. DISPUTE REGARDING THE ADMISSIBILITY OF FACTS FROM PLAINTIFF'S COMPLAINT

Pursuant to N.D. Ind. L.R. 56-1(f), the Defendants raise their disputes regarding the admissibility of facts raised in the Plaintiff's complaint. Plaintiff declared under the penalty of perjury that the statements in his complaint are true [ECF 2, p. 4]. To the extent that Plaintiff will rely on the statements in an attempt to survive a summary judgment motion, his declarations "must

1

be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(C)(4). Thus, affidavits that include legal conclusions, hearsay, irrelevant or immaterial matter, and opinions without an underlying factual basis should be excluded from consideration. *See Bradley v. Work*, 154 F.3d 704, 707 (7th Cir. 1998) (holding district court was correct in deciding to strike inadmissible hearsay, lay opinions, speculations and conclusion); *Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 886 (7th Cir. 1998) (affidavit testimony containing inferences and opinions without factual basis, bold assertions and conclusory assertions should be disregarded); *Pfeil v. Rogers,* 757 F.2d 850, 862 (7th Cir. 1985) (affidavit testimony containing legal argument, unsupported suspicions and hearsay should be disregarded).

Kendrick's complaint alleges that defendants were aware of the severity of his breathing problems. [ECF 12-1, ¶ 24]. However, Kendrick lacks personal knowledge of the state of mind of either defendant, so his conclusions are bold and conclusory. And Kendrick further alleges that he has medical problems caused by the fire. [ECF 12-1, ¶¶ 19, 26-27]. Kendrick is not a medical professional and therefore his causation opinions are mere speculation. Because the alleged injuries are cumulative in nature, "courts follow the general principle that a layman could not discern the specific cause and thus requires expert testimony about causation." *Myers v. Illinois Cent. R. Co.,* 629 F.3d 639 (7th Cir. 2010). Kendrick has provided no expert testimony regarding the cause of his alleged injuries, and the medical records before this Court show that Mr. Kendrick has not been diagnosed with any chronic medical or psychological conditions. And since he is not a medical expert, any sworn declarations regarding medical diagnoses or the cause of his alleged injuries should be stricken.

IV. ARGUMENT

*A. Standard of Review.*

Summary judgment is appropriate when there is no genuine dispute of material facts, and the moving party is entitled to judgment as a matter of law. *United States ex rel. Proctor v. Safeway, Inc.*, 30 F.4th 649, 658 (7th Cir. 2022). This process "is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (citations omitted). The substantive law underlying the claim defines which facts are material, and the Court should only refrain from granting the motion where there are "disputes over facts that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986).

To avoid summary judgment, the non-movant "must set forth specific facts showing there is a genuine issue for trial" on an otherwise dispositive issue. *See Anderson*, *supra*. To that end, the non-movant cannot simply rely on the allegations of his pleadings but must "demonstrate that the record, taken as a whole, could permit a rational finder of fact to rule in his favor[.]" *Johnson v. City of Fort Wayne*, 91 F.3d 922, 931 (7th Cir. 1996). If a party asserts that a fact cannot be so, or that it is genuinely disputed, he must support the assertion by (a) citing to particular parts of materials in the record; or (b) showing that the material cited does not establish the absence or presence of genuine dispute; or (c) showing that an adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1). At the summary judgment stage, a plaintiff must present evidence—as opposed to mere allegations or promises of evidence to be produced in the future—that would allow a reasonable trier of fact to rule in his favor.

B. *Dorrell Bass and Lanre Idowu did not violate Plaintiff's Eighth Amendment Rights.*

Title 42 U.S.C. § 1983 provides a "federal cause of action for the deprivation, under color of [state] law, of a citizen's rights, privileges, or immunities secured by the Constitution and laws of the United States . . . ." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). However, it is not §1983 that creates the substantive rights—this section "acts as an instrument for vindicating federal rights conferred elsewhere." *Spiegel v. Rabinovitz*, 121 F.3d 251, 254 (7th Cir. 1997). The claim's validity must be assessed by reference to the particular constitutional standard that governs the right. *Graham v. Connor*, 490 U.S. 386, 394 (1989).

> a. *Dorrell Bass and Lanre Idowu's Response to the December 17, 2021 Fire did not violate Kendrick's Eighth Amendment Rights.*

To prevail on his Eighth Amendment deliberate indifference claim, Kendrick must show that both Bass and Idowu were "aware of a substantial risk of serious injury to [the incarcerated person] but nevertheless failed to take appropriate steps to protect him from the known danger." *Guzman v. Sheahan*, 495 F.3d 852, 857 (7th Cir. 2007). In other words, Kendrick must prove that Sgt. Bass and Officer Idowu were deliberately indifferent to "an excessive risk to inmate health and safety[.]" *Gevas v. McLaughlin*, 798 F.3d 475, 480 (7th Cir. 2015) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837-38 (1994)). This includes two components: (1) "the harm to which the prisoner was exposed must be an objectively serious one;" and (2) judged subjectively, the prison official "must have actual, and not merely constructive, knowledge of the risk." *Id.*

To satisfy the objective component of his Eighth Amendment claim, Kendrick must demonstrate that his condition is objectively, sufficiently serious. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005) (citing *Brennan*, 511 U.S. at 834). To that end, the Plaintiff must show that he faced a risk of harm that was "almost certain to materialize if nothing is done." *Brown v. Budz*, 398 F.3d 904, 911 (7th Cir. 2005). But even a negligent failure to respond to a transitory problem—

**or an ineffective or inadequate response**—is not enough to trigger the protections of the Eighth Amendment; nor are temporary, uncomfortable conditions. *Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir. 1988) (emphasis added). Likewise, temporary, unintentional neglect of an inmate's needs does not reach unconstitutional proportions. *Id*. Inconvenient or even unpleasant conditions are not unconstitutional, as "[t]he Constitution does not require prison officials to provide the equivalent of hotel accommodations or even comfortable prisons. Occasional discomfort is part of the penalty that criminal offenders pay for their offenses against society." *Lunsford v. Bennett*, 17 F.3d 1574, 1581 (7th Cir. 1994).

For the second element, the subjective component, Kendrick must show that Bass and Idowu were both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Deliberate indifference connotes criminally reckless conduct, "that is, conduct 'that reflects complete indifference to risk—when the actor does not care whether the other person lives or dies, despite knowing that there is a significant risk of death.'" *Salazar v. City of Chicago*, 940 F.2d 233, 238 (7th Cir. 1991)(quoting *Archie v. City of Racine*, 847 F.2d 1211, 1219 (7th Cir. 1988)(en banc); *see also Ross v. United States*, 910 F.2d 1422, 1433 (7th Cir. 1990)("[f]or reckless in the constitutional sense, the state actor must ignore a significant risk of death[.]"). Reckless conduct is shown by "something approaching a total unconcern for [the plaintiff's] welfare in the face of serious risks, or a conscious, culpable refusal to prevent harm." *Duane v. Lane*, 959 F.2d 673, 677 (7th Cir. 1992). This total disregard for a prisoner's safety is the "functional equivalent of wanting harm to come to the prisoner." *McGill v. Duckworth*, 944 F.2d 344, 347 (7th Cir.1991).

Thus, the defendant "must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw the inference." *Farmer*, 511 U.S.

5

at 837. And the defendant must have "actual knowledge of impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *Santiago v. Wells*, 599 F.3d 749, 756 (7th Cir. 2010) (quotation marks and citation omitted). Mere awareness of the facts giving rise to a substantial risk does not establish deliberate indifference. *Brown*, 398 F.3d at 916. It is also not enough that he or she should have known of a risk. *Pierson v. Hartley*, 391 F.3d 898, 902 (7th Cir. 2004). Instead, deliberate indifference requires evidence that an official actually knew of a substantial risk of serious harm and consciously disregarded this substantial risk nonetheless. *Id.* "Prison officials who had actual awareness of a substantial risk to the health or safety of an inmate incur no liability if they 'responded reasonably to the risk, even if the harm ultimately was not averted, because in that case it cannot be said that [the correctional staff was] deliberately indifferent.'" *Guzman*, 495 F.3d at 857 (citing *Peate v. McCann*, 294 F.3d 879, 882 (7th Cir. 2002)).

Most importantly, "individual liability under § 1983 requires personal involvement in the alleged constitutional deprivation." *Minix v. Canarecci*, 597 F.3d 824, 833 (7th Cir. 2010). As noted above, "[p]roving that an officer was deliberately indifferent to the safety of [an offender] requires 'more than a showing of negligent or even grossly negligent behavior.'" *Guzman,* 495 F.3d at 857 (*citing Fisher v. Lovejoy*, 414 F.3d 659, 662 (7th Cir. 2005)). "The officer must have acted with 'the equivalent of criminal recklessness.'" *Id.* In addition, it is not enough to show that a prison guard merely failed to act reasonably. *Gibbs v. Franklin*, 49 F.3d 1206, 1208 (7th Cir.1995). Nor are prison officials expected to eliminate the possibility of all dangers. *McGill v. Duckworth*, 944 F.2d 344, 345 (7th Cir. 1991).

"[T]he 'deliberate indifference' standard . . . is met only if there were a strong likelihood, rather than a mere possibility, that [serious harm] would occur." *State Bank of St. Charles v. Camic*,

712 F.2d 1140, 1146 (7th Cir. 1983). For the plaintiff to succeed, the plaintiff "must demonstrate that he 'was at serious risk of being harmed [and the on-duty correctional staff] decided not to do anything to prevent that harm from occurring even though [the correctional staff] could have easily done so.'" *Pinkston*, 440 F.3d at 889 (citing *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005)).

Kendrick has failed to prove both the objective and the subjective components of his claim against Bass and Idowu. Kendrick alleges in his complaint that he was "directly above the fire." [ECF 12-1, ¶ 3]. This is inaccurate at best and deceptive at worst. The fire occurred in cell A-108 North at approximately 12:10 a.m. [Ex. B at ¶ 4; Ex. C at ¶ 3]. Kendrick resided in A-536 North, which is four floors above and fourteen cells down from the fire. Kendrick was not directly above the fire. [Ex. A at ¶¶ 3, 5; Ex. A-1]. The fire began at approximately 12:10 a.m. and was extinguished by approximately 12:17 a.m. [Ex. B at ¶¶ 4, 9; Ex. C at ¶ 3]. As such, the fire itself lasted less than 10 minutes and did not spread beyond cell A-108. [Ex. B at ¶ 10; Ex. C at ¶ 7].

Sergeant Bass, Officer Idowu, and the first responders were reasonably focused on cell A-108 and the immediately surrounding areas rather than the fifth floor. They were focused on extinguishing the fire and quickly attending to the incarcerated individuals most in danger, and their response was quick. Officer Idowu immediately proceeded to cell A-108 when he saw the fire. [Ex. B at ¶ 5]. Sergeant Bass immediately attempted to put the fire out with a fire extinguisher before first responders arrived. [Ex. C at ¶ 4]. First responders and firefighters arrived at the scene at approximately 12:11 a.m.—within a minute of the fire starting. [Ex. B at ¶ 6]. James Griffith (who resided in cell A-108) barricaded his door with a mattress and had a chain connected to a padlock on his cell door. Sergeant Bass requested bolt cutters and Officer Page used bolt cutters to access the cell. First responders removed Griffith, who was unresponsive. [Ex. B at ¶ 8; Ex. C at ¶ 5]. Sergeant Bass and Officer Page entered the cell to remove Griffith, who was unresponsive.

7

Sergeant Bass placed Griffith in restraints, and he was then placed on a gurney. [Ex. C at ¶ 6]. An ambulance arrived at 12:24 a.m. and Nurse Gorske cleared the signal 3000 at 12:26 a.m. A trip team took Griffith to the hospital. [Ex. B at ¶ 12; Ex. C, at ¶ 6].

      The A-Cell house had exhaust fans on the unit, and the first responders retrieved extra fans to clear the cell house of smoke. [Ex. B at ¶ 13]. While the smoke-filled conditions were unpleasant, they were temporary. [*See* Ex. A-2]. The fire itself was nowhere close to Kendrick. Even if, as Kendrick claims, Sergeant Bass and Officer Idowu responded to the fire ineffectively or inadequately by failing to evacuate the fifth floor, that is not enough to trigger the protections of the Eighth Amendment. *Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir. 1988). Recently, other Courts have examined injuries related to smoke inhalation in the context of 1983 claims. Allegations of chest pain, worsened asthma, and deteriorating mental health from "thick smoke fumes" coming from a different area of the prison are not sufficiently severe to support an Eighth Amendment Claim. *Thompson v. Renee,* No. 21-CV-10371 (VEC), 2023 WL 2575222, at *5 (S.D.N.Y. Mar. 17, 2023). The Southern District of New York has also held that exposure to thick black smoke for four hours that allegedly caused chest pain, shortness of breath, and anxiety did not rise to the level of an Eighth Amendment claim regarding constitutionally inadequate medical care. *Garcia v. Fischer*, No. 13 CV 8196 (VB), 2016 WL 297729, at *6 (S.D.N.Y. Jan. 22, 2016). Kendrick's alleged injuries and the circumstances surrounding these alleged injuries are like those in *Garcia* and *Thompson*. Similarly, the conditions Kendrick experienced are not sufficiently severe to support an Eighth Amendment Claim.

      Mr. Kendrick has likewise failed to satisfy the subjective component of his claim. This is because Sergeant Bass and Officer Idowu's documented response to the fire – attempting to put it out and attending to the inmate most at risk from the flames– was absolutely reasonable given the

8

circumstances that existed. There was no conscious, culpable refusal to prevent harm; rather, Sergeant Bass and Officer Idowu acted to ensure that the risk of harm was minimized to all individuals. That inmates in the A-Cell House were exposed to smoke from the fire is unfortunate, but it does not establish liability under the Eighth Amendment when Sergeant Bass and Officer Idowu responded quickly and reasonably to the fire in cell A-108. *See Peate*, 294 F.3d at 882.

> b. *Dorrell Bass and Lanre Idowu were not Deliberately Indifferent to Mr. Kendrick's allegedly serious medical needs.*

As described in the previous section, the subjective component of the Court's analysis requires Kendrick to show that Bass and Idowu acted with deliberate indifference to his health and safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). When the Plaintiff brings a claim against a supervisory official (such as Sergeant Bass), the plaintiff "has the burden of demonstrating that the communication, in its content and manner of transmission, gave the prison official sufficient notice to alert him or her to 'an excessive risk to inmate health or safety.'" *Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). However, Sergeant Bass did not go to the fifth floor on December 17, 2021. [Ex. B at ¶ 15; Ex. C at ¶ 13]. And Plaintiff admitted in deposition that he has never spoken to Sergeant Bass and has never communicated with Sergeant Bass regarding any health concerns. [Ex. D, p. 23 lines 8-21]. Certainly, Sergeant Bass cannot be deliberately indifferent to the specific needs of Kendrick when Kendrick never communicated any needs to him.

An additional layer of deference is present here for both Sergeant Bass and Officer Idowu; nonmedical staff may typically rely on medical staff's judgment regarding whether medical care is being appropriately provided. *Burks v Raemisch*, 555 F.3d at 595; see also *Miranda v. Cnty. of Lake*, 900 F.3d 335, 343 (7th Cir. 2018) ("When detainees are under the care of medical experts,

9

nonmedical jail staff may generally trust the professionals to provide appropriate medical attention."). An individual's culpable misconduct, in the context of "deliberate indifference" to serious medical needs, often depends on whether a qualified health care provider has informed them of the acuity of the condition involved. "As *Hayes*, *Johnson*, *Greeno*, *Spruill*, and a host of other cases make clear,[1] the law encourages non-medical security and administrative personnel at jails and prisons to defer to the professional medical judgments of the physicians and nurses treating the prisoners in their care without fear of liability for doing so." *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010). The plaintiff has the burden of demonstrating that there is evidence from which a factfinder could conclude that the defendants acted with a sufficiently culpable state of mind. *Farmer*, 511 U.S. at 834.

In this context, courts further distinguish between medical and non-medical prison staff. "Nonmedical officials can 'be chargeable with . . . deliberate indifference'" only where they have "'reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner.'" *Hayes v. Snyder*, 546 F.3d 516, 525 (7th Cir. 2008) (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004).

Here, Nurse Gorske was present on December 17, 2021 and responded to medical emergencies related to the fire. [Ex. B at ¶ 12; Ex. C, at ¶ 6]. Sergeant Bass instructed his officers to perform wellness checks on all floors to ensure that all incarcerated persons were conscious and not in immediate distress. [Ex. C at ¶ 8]. Officer Idowu conducted a wellness check of incarcerated individuals in A cell house. As he is not a medical professional, his goal in the wellness checks was to ensure that no incarcerated persons were in any immediate distress. [Ex. B at ¶ 14]. When Officer Idowu went by cell A-536, Kendrick spoke to him. Kendrick was conscious, he was

---

[1] *Hayes v. Snyder*, 546 F.3d 516 (7th Cir. 2008); *Johnson v. Doughty*, 433 F.3d 1001 (7th Cir. 2006); *Greeno v. Daley*, 414 F.3d 645, 655-56 (7th Cir. 2005); *Spruill v. Gillis*, 372 F.3d 218 (3d. Cir. 2004).

breathing, and he did not appear to be in any immediate distress. [Ex. B at ¶ 16]. Officers advised medical of all individuals requesting medical treatment, and Kendrick himself admits that he was able to write a request for medical treatment. [Ex. C at ¶ 9; Ex. D, p. 24 lines 11-12; Ex. D p. 80 lines 7-9]. Officer Idowu informed medical of Mr. Kendrick's request. [Ex. B at ¶ 18]. No one prevented Kendrick from making a medical request. With the sheer number of incarcerated persons in A-Cell House, medical could not see everyone immediately.[2] Bass and Idowu have no medical training or experience. [Ex. B at ¶ 2; Ex. C at ¶ 2]. Sergeant Bass and Officer Idowu reasonably relied on the medical staff to assess individuals and provide medical care, as well as relying on the medical staff determine who needed care most urgently. [Ex. B at ¶ 18; Ex. C at ¶ 11].

> C. *Plaintiff has suffered no more than a de minimus injury and thus may not recover under 42 U.S.C. Section 1983.*

Summary judgment in favor of Bass and Idowu is necessary because Plaintiff has not actually suffered a permanent physical injury sufficient to permit recovery in the prison context under 42 U.S.C. Section 1983. 42 U.S.C. Section 1997e(e), which applies to all civil rights suits brought by prisoners, states: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of title 18, United States Code)." Notably, the statute does not define a physical injury, and thus the judiciary has been left to interpret which sort of injuries are covered by the statute. The Seventh Circuit has held that a plaintiff in a suit brought pursuant to 42 U.S.C. Section 1983 cannot recover for *de minimis* injuries. *Tesch v. County of Green Lake*, 157 F.3d 465, 476 (7th Cir. 1998); *see also Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997) (A *de minimis* physical injury does not satisfy the requirements of 42 U.S.C. 1997e(e).).

---

[2] Exhibit A-1 depicts the number of cells housing incarcerated persons in the A-Cell House.

Here, Kendrick has suffered, at most, a *de minimis* injury. Kendrick was prescribed an inhaler and a short course of Prednisone. After he completed the Prednisone, his lungs were clear to auscultation and his respirations were even and unlabored. His chest x-ray revealed that he had no acute cardiopulmonary abnormality. [Ex. A-4, pp. 5-6]. Kendrick's medical providers cleared him to work in the kitchen and documented that he was "free of illness or injury; free of physical impairment." When updating his classification, Nurse Fritter indicated that Kendrick did not have any chronic medical conditions. [Ex. A-4, pp. 10, 12 14, 15].

While Kendrick occasionally presented with mild wheezing, his medical records reflect that his breathing sounded good on many occasions when he saw Dr. Marthakis, NP Thews, and NP Fagan. [Ex. A-4, pp. 24-25]. For example, in September 2022, NP Fagan found that Mr. Kendrick had normal auscultation and breathing effort. He had no shortness of breath at rest or on exertion. His peak flow was 325, and NP Fagan found "No indication for inhaler". [Ex. A-4, pp. 31-32]. In October, Kendrick's peak flows were good but he had mild wheezing even though his breathing was otherwise normal. NP Fagan reordered his albuterol inhaler at that point. [Ex. A-4, pp. 34-36]. It is worth noting that, while Kendrick never received any medical diagnosis for his alleged injuries, NP Thews did recommend weight reduction and deep breathing exercises to help alleviate his complaints. [Ex. A-4, pp. 18-20]. Finally, aside from his significant traits of narcissistic personality disorder, Kendrick has not been diagnosed with any mental health conditions at his psychotherapy appointment after the fire. [Ex. A-4, pp. 21-23].

At most, Kendrick's injury is that he now occasionally uses an albuterol inhaler, which is a *de minimus* injury. There is no evidence to support the conclusion that Kendrick suffered any permanent physical injury as none of his providers diagnosed him with any permanent condition or placed any limitations on him. Furthermore, Kendrick's records indicate that, while he thinks

the fire caused his injury, his medical providers do not opine on causation and therefore there is no evidence that his *de minimis* injury was caused by the fire. And as Kendrick is not a medical provider, he cannot opine as to the causation of his injuries.

Since *de minimis* injuries do not constitute recoverable injuries under Section 1983, summary judgment is due to be granted in favor of Bass and Idowu as to the pending Eighth Amendment claim.

> D. *Sgt. Bass and Officer Idowu are entitled to qualified immunity from suit because the record fails to indicate that they acted plainly incompetently, in bad faith, or in knowing violation of the law.*

Summary judgment in favor of Sgt. Bass and Officer Idowu is also due because it cannot be shown that they acted plainly incompetently, in bad faith, or in knowing violation of the law. Thus, the defendants entitled to qualified immunity from suit. As a general rule, government officials are immune from civil liability so long as their conduct conforms to what a reasonable person would have believed to be lawful in light of those rights clearly enumerated by statute or the Constitution. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In the event a defendant's behavior was not clearly forbidden at the time of its commission, he is assumed to lack knowledge about the conduct's possible illegality and cannot be held liable. *Id*. "Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citations omitted).

Designed to protect government officials "from undue interference with their duties and from potentially disabling threats of liability", the doctrine of qualified immunity serves as "an immunity from suit rather than a mere defense to liability." *Purtell v. Mason*, 527 F.3d 615, 621

(7th Cir. 2008) (citations omitted). Further, "the protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Pearson*, 555 U.S. at 231. Since qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law," courts must determine whether a defendant is entitled to qualified immunity as early as possible during the proceedings. *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *Purtell*, 527 F.3d at 621.

Regarding fires, incarcerated individuals do not have a right to be from exposure to smoke from an accidental fire, or a right to immediate medical care for smoke inhalation in the middle of an ongoing emergency at prison, and officers are entitled to wide latitude to make split-second decisions to protect everyone during emergencies. *Sibley v. Dart*, 435 F. Supp. 3d 920 (N.D. Ill. 2019).

Here, Sgt. Bass and Officer Idowu are entitled to qualified immunity because the record fails to show that he acted plainly incompetently, in bad faith, or in knowing violation of the law. Contrary to Kendrick's assertion, prison staff are not required to evacuate the entire cell block during the event of a fire that is contained to a single cell. Plaintiff has not offered, and indeed is unable to offer, any admissible evidence showing that Sgt. Bass and Officer Idowu acted in bad faith or in a manner that could otherwise be construed as outside the bounds of reasonably competent conduct.

Kendrick is unable to show that Sgt. Bass and Officer Idowu knowingly violated the law. The record also supports Sgt. Bass and Officer Idowu's good faith and reasonable conduct. There is no evidence in the record to suggest that either defendant was deliberately indifferent to Mr. Kendricks's health and safety. As such, Sgt. Bass and Officer Idowu are entitled to qualified

immunity from suit as a matter of law. Accordingly, summary judgment should be granted in their favor as to Plaintiff's pending Eighth Amendment claim.

## V.  CONCLUSION

There is no evidence that Sergeant Bass and Officer Idowu subjected Mr. Kendrick to unconstitutional conditions of confinement on the night of the fire or that they were deliberately indifferent regarding Mr. Kendrick's complaints about his health and safety. Further, there is no evidence that Mr. Kendrick suffered more than a *de minimis* injury as a result of the fire. Summary judgment should therefore be entered in favor of both Defendants.

Respectfully submitted,

**EICHHORN & EICHHORN, LLP**

/s/*Allison E. Pulliam*
One of the Attorneys for Defendants,
Dorell Bass and Lanre Idowu

David J. Beach, # 18531-45
Allison E. Pulliam, #36232-45
EICHHORN & EICHHORN, LLP
2929 Carlson Drive, Suite 100
Hammond, IN 46323
Telephone: (219) 931-0560
dbeach@eichhorn-law.com
apulliam@eichhorn-law.com

**CERTIFICATE OF SERVICE**

I hereby certify that on October 16, 2023, a copy of the foregoing was filed electronically. Service of this filing will be made on all ECF-registered counsel by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Allison E. Pulliam