UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

BRIAN KENDRICK,

    Plaintiff,

v.

DORELL BASS and LANRE IDOWU,

    Defendants.

CAUSE NO. 3:22-CV-673 DRL

<u>OPINION AND ORDER</u>

On December 17, 2021, a fire broke out in an inmate's cell at the Indiana State Prison. Brian Kendrick was housed multiple floors above and down the hall from the cell where the fire occurred. Shortly after the fire, Mr. Kendrick informed Officer Lanre Idowu that he was having a hard time breathing and that his lungs were burning from the smoke. The officer referred the complaint to medical staff, but Mr. Kendrick never received medical attention that night. Mr. Kendrick sued Officer Idowu for violating his Eighth Amendment rights (and a sergeant whose claims since have been abandoned). Today the officer requests summary judgment on all claims. The court grants summary judgment.

BACKGROUND

On December 17, 2021, Brian Kendrick was incarcerated at the Indiana State Prison [41-1 ¶ 5]. He was housed in cell A-536 North [*id.*]. At approximately 12:10 am, James Griffith, an incarcerated individual housed in cell A-108 North, started a fire in his cell [*id.* ¶ 4; 41-5 ¶ 4]. Mr. Kendrick was housed four floors above and fourteen cells down the hallway from the fire [41-1 ¶ 3; 41-2]. Mr. Kendrick says he woke up to his cell filled with thick black smoke, which he was "suffocating on" [41-3 at 13].

Due to the smoke, Mr. Kendrick says he laid on the floor with a wet towel over his nose and mouth to aid his breathing. Prison officials quickly responded to the fire [41-5 ¶ 6]. Sergeant Dorrell Bass, the officer who called in the fire, first attempted to put out the fire with a fire extinguisher before first

responders arrived; however, he was unable to gain entry to the fire because Mr. Griffith had barricaded himself inside his cell [41-6 ¶¶ 3-5]. Officer Idowu proceeded to the fire alongside Sergeant Bass [41-5 ¶ 5]. Ultimately, guards needed to use bolt cutters to enter Mr. Griffith's cell [41-6 ¶ 5; 41-7 at 1]. Mr. Griffith, who at one point was using his body weight to prevent guards from entering his cell, was unresponsive by the time officers entered [41-7 at 1].

Mr. Kendrick reported later that when he awoke to the fire, his cell was filled with thick black smoke [41-3 at 13]. Another inmate (Patrick Dorsey) housed next to Mr. Kendrick that day says there was "really a lot of smoke" [55-1 Tr. 11]. Although he was unable to tell where the fire originated, he said after about 10 or 15 minutes he "could almost see the flames" as the fire was "like an inferno" [*id.*]. The smoke was so bad that he could barely see his neighbor's cell [*id.* 12]. About an hour later the smoke began to dissipate, though it left soot on the walls [*id.* 15]. The inmate housed on the other side of Mr. Kendrick said his cell had been filled with smoke for "maybe" 30 minutes and that the smoke left black soot on the blades of a fan he used [51-2 Tr. 12].

The fire was extinguished at approximately 12:17 am (about seven minutes after its start) and never spread beyond the one cell [41-5 ¶¶ 9-11]. The A cellhouse was not evacuated [*id.*]. After first responders extinguished the fire, Officer Lanre Idowu conducted a wellness check of the individuals in A cellhouse at Sergeant Bass's direction [41-5 ¶ 14; 41-6 ¶ 8]. Officer Idowu's goal during this check was only to "ensure that no incarcerated persons were in any immediate distress," as Officer Idowu is not a medical professional and, according to him, could not render aid [41-5 ¶¶ 14, 18]. Officer Idowu saw Mr. Kendrick conscious, breathing, and not in immediate distress [*id.* ¶ 16].

Mr. Kendrick, along with other inmates, nonetheless asked to see medical, and Officer Idowu passed these requests along to the prison's medical team [*id.* ¶¶ 17, 18]. Mr. Kendrick told Officer Idowu that he was having problems breathing and that his throat, eyes, and lungs were burning [41-3 at 13]. For reasons unexplained on this record, Mr. Kendrick did not receive medical care the night of the fire [*id.*].

2

In addition to the request communicated to Officer Idowu, that same day Mr. Kendrick says he turned in a healthcare request to the prison [41-8 Tr. 24].

Sergeant Bass neither participated in the wellness check nor interacted with Mr. Kendrick the night of December 17, 2021 [41-5 ¶ 15; 41-6 ¶ 13; 41-8 Tr. 23].[1] Both Sergeant Bass and Officer Idowu relied on prison medical officials to determine which inmates needed urgent medical attention [41-5 ¶ 18; 41-6 ¶ 11]. After the fire was extinguished, first responders used the prison's exhaust fans in addition to supplemental portable fans to clear the cellhouse of smoke [41-7 at 2].

Mr. Kendrick first received treatment from prison medical officials on January 11, 2022 for symptoms he says resulted from the December 17, 2021 fire [41-4 at 1-2]. According to the examination report, Mr. Kendrick was wheezing, and his lung sounds were abnormal [*id.* 2]. The nurse practitioner prescribed him an inhaler and prednisone and ordered a chest x-ray [*id.* 3]. Mr. Kendrick requested a refill of his inhaler during a follow-up appointment on January 21, 2022, at which time his lung sounds were now normal [*id.* 5]. During numerous subsequent appointments, Mr. Kendrick continued to report that he still suffered from shortness of breath and nightmares [*id.* 6, 7, 18, 22, 24, 31, 34]. A chest x-ray taken on September 29, 2022 was normal [*id.* 34].

Mr. Kendrick filed a prison administrative grievance after the fire [41-3]. In his grievance and subsequent appeal, Mr. Kendrick alleged that officers failed to evacuate the cellhouse during the fire and failed to provide him with the medical treatment he requested [41-3 at 13]. On August 18, 2022, Mr. Kendrick filed a *pro se* complaint here [1]. He filed an amended *pro se* complaint, and the court granted him leave to proceed against Sergeant Bass and Officer Idowu in their individual capacities on a deliberate indifference claim under the Eighth Amendment [11]. Mr. Kendrick later retained counsel.

---

[1] For this reason, Mr. Kendrick appropriately abandons any claim against Sergeant Bass and proceeds at this stage only against Officer Idowu.

3

STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The non-moving party must present the court with evidence on which a reasonable jury could rely to find in his favor. *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 972 (7th Cir. 2020). The court must construe all facts in the light most favorable to the non-moving party, view all reasonable inferences in that party's favor, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 491-92 (7th Cir. 2000), and avoid "the temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003); *see also Joll. v. Valparaiso Comty. Schs.*, 953 F.3d 923, 924 (7th Cir. 2020).

In performing its review, the court "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Nor is the court "obliged to research and construct legal arguments for parties." *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011). Instead, the "court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge*, 24 F.3d at 920. The court must grant summary judgment when no such genuine factual issue—a triable issue—exists under the law. *Luster v. Ill. Dept. of Corrs.*, 652 F.3d 726, 731 (7th Cir. 2011).

DISCUSSION

Mr. Kendrick claims violations of his constitutional rights under 42 U.S.C. § 1983. Section 1983 serves as a procedural vehicle for lawsuits "vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989). To establish a § 1983 claim, he must show that he was "deprived of a right secured by the Constitution or federal law, by a person acting under color of law." *Thurman v. Vill. of Homewood*, 446 F.3d 682, 687 (7th Cir. 2006). He may bring a § 1983 claim only against an individual "personally responsible for the constitutional deprivation." *Doyle v. Camelot Care Ctrs., Inc.*, 305 F.3d 603, 614 (7th Cir. 2002). He advances two theories under the Eighth Amendment.

4

A. *Improper Response to Fire.*

Mr. Kendrick claims that Officer Idowu was deliberately indifferent to the risks posed by the fire. Under the Eighth Amendment, prisoners cannot be subjected to cruel and unusual punishment. *See Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994). The law employs both an objective and subjective inquiry. *Id.* at 834. The objective prong asks whether the alleged deprivation or condition is "sufficiently serious" that a prison employee's act or omission resulted in "the denial of the minimal civilized measure of life's necessities." *Id.* The subjective prong requires a prisoner to prove that the defendant acted with "deliberate indifference" to the prisoner's health or safety. *Id.* Specifically, the plaintiff must establish that a defendant "acted in an intentional or criminally reckless manner"—*i.e.*, "the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (quotations, brackets, and citations omitted); *see also Santiago v. Wells*, 599 F.3d 749, 756 (7th Cir. 2010) (defendant must have "actual knowledge of impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it") (quotations and citation omitted). "[S]howing mere negligence is not enough." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (*en banc*).

Mr. Kendrick argues that Officer Idowu should have evacuated him upon determining that there was a fire in the cellhouse. Officer Idowu quickly attended the fire, and he and other first responders reasonably had their attention focused on entering the cell that was on fire—not least for an inmate barricaded there and later found unresponsive. The fire was extinguished within about seven minutes. It never spread beyond the one cell. Mr. Kendrick was housed four floors above and fourteen cells down the hallway from the fire.

5

Despite this, Mr. Kendrick says the smoke was so severe he was "choking" and "star[t]ed to black out" [41-3 at 12]. Other inmates housed near Mr. Kendrick echo this danger. Whether they faced a substantial risk on this record, no reasonable jury could conclude that Officer Idowu was deliberately indifferent to it. For one, Mr. Kendrick offers no evidence that Officer Idowu knew of Mr. Kendrick's worsening cell condition or could reasonably do anything about it when he was emergently attending the fire and barricaded inmate elsewhere in the cellhouse. *See Labrec v. Walker*, 948 F.3d 836, 841 (7th Cir. 2020) (prison official must have actual, not merely constructive, knowledge of the risk to be liable). Thereafter, Officer Idowu and other first responders used the cellhouse's exhaust fans and additional portable fans to clear the smoke. In addition, Officer Idowu conducted a wellness check on Mr. Kendrick and passed to medical staff the information for his care. No reasonable jury could call this deliberately indifferent. Rather than turn a blind eye to an inmate's safety or care, Officer Idowu took reasonable efforts to address it. The mere failure "to choose the best course of action does not amount to a constitutional violation." *Peate v. McCann*, 294 F.3d 879, 882 (7th Cir. 2002). The court must grant summary judgment accordingly.

B.   *Lack of Medical Care.*

Mr. Kendrick also argues that Officer Idowu violated his Eighth Amendment rights by failing to provide him with medical treatment. A prisoner's constitutional right to adequate medical care is violated when prison officials display "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Mr. Kendrick must satisfy both an objective and a subjective component of proof. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005).

To satisfy the objective prong, a prisoner must show that his medical condition was "objectively, sufficiently serious." *Farmer*, 511 U.S. at 834. A serious medical condition is one either "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Greeno*, 414 F.3d at 653. As to the subjective prong, a prisoner

6

must demonstrate that a prison official acted with a "sufficiently culpable state of mind," *id.*, such that he knew of a substantial risk of harm to the inmate and disregarded the risk. *Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002). When an officer has provided some level of care for a prisoner's medical condition, to establish deliberate indifference the prisoner must show that his "responses to [the condition] were so plainly inappropriate as to permit the inference that [he] intentionally or recklessly disregarded [the inmate's] needs." *Hayes v. Synder*, 546 F.3d 516, 524 (7th Cir. 2008).

"A medical condition need not be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). Even assuming that Mr. Kendrick suffered more than a *de minimis* injury based on his medical care over a month and eventual prescription for an inhaler and prednisone (an anti-inflammatory) after a nurse practitioner noted abnormal chest sounds and wheezing, once more the record will not permit a reasonable jury to find that Officer Idowu was deliberately indifferent to Mr. Kendrick's medical care.

Nothing on this record compels the finding that Officer Idowu was required to provide emergent care at the moment of the wellness check. Mr. Kendrick was breathing and not in obvious signs of distress. And the fact remains undisputed that Officer Idowu communicated Mr. Kendrick's request to medical staff [41-5 ¶ 18; 41-6 ¶ 9]. Whether someone else acted slowly in not giving Mr. Kendrick care that evening, Officer Idowu acted appropriately in involving medical staff. *See, e.g., Hayes*, 546 F.3d at 527-28 (affirming summary judgment in favor of non-medical defendants who investigated a prisoner's medical complaints and referred them to the responsible medical providers); *Greeno,* 414 F.3d at 655-56 (non-medical defendant's failure to take further action once matter was referred to medical providers could not be viewed as deliberate indifference). The law has "long recognized that correctional institutions typically engage in the division of labor between medical professionals and other security and administrative staff." *McGee v. Parsano*, 55 F.4th 563, 569 (7th Cir. 2022) (quotations and citations

omitted); *see also Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) ("Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job."). A reasonable jury could not say, at least on this record, that Officer Idowu learned later that his report to medical staff had gone unheeded or needed further action. The court thus grants summary judgment for Officer Idowu.

C. *Qualified Immunity.*

Officer Idowu also argues that he is entitled to qualified immunity. Because the court grants summary judgment on the Eighth Amendment claims for deliberate indifference, the court need not reach the issue of qualified immunity, though without a record that would substantiate a constitutional violation for a reasonable jury, the law would afford qualified immunity to Officer Idowu too. *See Los Angeles Cnty. v. Rettele*, 550 U.S. 609, 616 (2007); *Chavez v. Martinez*, 538 U.S. 760, 766 (2003).

CONCLUSION

Accordingly, the court GRANTS the motion to file exhibits [55], GRANTS the summary judgment motion [41], and DIRECTS the entry of judgment for the remaining defendants. This order terminates the case.

SO ORDERED.

August 28, 2024                             *s/ Damon R. Leichty*
                                            Judge, United States District Court

8